## CHICAGO, ROCK ISLAND & TEXAS RAILWAY CO. v. J. A. BOYLES.

### No. 2027.

**1. Railway Company—Carrying Passenger Beyond Destination—Promise of Conductor.**

A conductor's promise to notify a passenger of the arrival of the train at the station where the passenger is to alight is ordinarily a mere personal undertaking, beyond the scope of the conductor's duty, and not binding on the railway company where the arrival of the train at such station is properly announced in the usual and regular manner; but circumstances involving the age, sex or physical infirmity of the passenger, afford exceptions to the. rule.

**2. Same—Case Stated.**

Where plaintiff's wife, traveling with a sick child that required her constant attention, was promised by the conductor that he would personally notify her of the arrival of his train at her destination, such promise was within the apparent scope of his authority and binding on the company, if the conductor knew at the time of the child's condition.

**3. Same—Damages Too Remote.**

Where plaintiff's wife, having with her a sick child, was carried by the .defendant company beyond the place where she was to leave the car and take another line of railroad, the facts, that she was to be met at a station on such other road by her father, and thence carried to her sister's in the country, where her child would receive medical treatment, and that because of defendant's failure to put her off at the proper place, she suffered mental anguish and was deprived for part of a day of medical attention to the child, are not proper elements of damage, where it is not alleged or proved that the defendant company had knowledge of these facts.

Appeal from the County Court of Montague. Tried below before Hon. Levi Walker.

*Thomas & McDonald,* for appellant.

No brief for appellee reached the Reporter.

TARLTON, Chief Justice.—On May 26, 1893, Mrs. Boyles, the wife of appellee, J. A. Boyles, was, with her sick child, a passenger on the train of appellant. She took passage at El Reno, in the Indian Territory, for Ringgold, a station on the appellant's line in Montague County, Texas. The latter station was her point of destination on the appellant's line, but her point of ultimate destination was the home of her sister in the country, four of five miles from the town of St. Jo, a station in Montague County on another line of railway. In going to St. Jo by rail, it became necessary for Mrs. Boyles to remain all night at Ringgold. She was carried by the appellant beyond the latter station, to Bowie, a station some twenty miles further south, whence, on the next day, she was brought back free of charge by the appellant to Ringgold.

On account of the alleged negligence of the company in taking her beyond her station, her husband brought this suit and recovered a verdict and judgment in damages for the sum of $75, from which this appeal is prosecuted. The fact of negligence, as substantially alleged in the petition, was, "that during the trip and long before the defendant's train reached Ringgold, the passenger conductor came to the plaintiff's wife and child and took up their tickets and gave them no marked tickets, and at the time told Mrs. Boyles to take care of her sick child and trust to him (the conductor), and assured her that he would see that she got off at Ringgold all right; that she relied on his assurances, and depended on him to inform her when she arrived at Ringgold; that she was busily engaged with her sick child, and did not hear the name of Ringgold called by anyone, and did not know when she passed the station, and the conductor failed and neglected to notify her as he agreed to do of the arrival of the train at Ringgold, and that she did not know or suspect that she had passed the station until she was fifteen or twenty miles beyond it, at which time she called the conductor and reminded him of his promise, and of her earnest desire to be at Ringgold that night, and that he failed and refused to carry her back."

The evidence relied upon by the plaintiff to sustain these allegations is the testimony of Mrs. Boyles, as follows: "My child was very sick, and when the conductor came around he noticed my child being sick and told me to attend to my child and that he would see me off at Ringgold, and I relied on his promise and was attending to my child when we passed my station, and I did not know anything about it. If the name of the station was called, I did not hear it, and knew no better until we had got some distance beyond there. I didn't know we had passed

Ringgold until I heard the trainmen call 'Bowie,' when I found that we had passed my place, and I then called the conductor and told him about it, and he said for me to stay all night at Bowie, as there would be no train back until morning, and he would bring me back in the morning on the train. * * * I went to the train the next morning and the conductor carried me back to Ringgold, and I got to St. Jo that evening. If I had not been carried past, I would have got there in the morning."

The conversation as detailed by Mrs. Boyles with the conductor conflicted with the statement of the latter, who testified as follows: "When I took up Mrs. Boyles' ticket she asked me about the station she got off at, and I told her she would be notified in time to get off. I didn't tell her I would see her off, or help her, but that she would be notified, and when we left Terral, the station before we get to Ringgold, my brakeman called out twice loud enough to be heard over the car, 'The next station is Ringgold;' and then when the whistle sounded he called it out twice more, and the people began to get off and I went to the front end. There were several people got off, men, women and children, and I had no idea but what this lady got off till I went through the car after we left there and found her still on. She said she did not hear the station called, and I then told her that I would carry her on to Bowie, where there were good hotels, and would bring her back the next morning, to which she made no objection. I carried her back the next morning."

In his statement that notice of the station was announced four times, and that the train was stopped at Ringgold, and that passengers for that station left the train, the conductor is corroborated by other witnesses.

On this issue of negligence, and the consequent damages, the court thus instructed the jury: "It is the duty of railway companies in transporting passengers over their railway lines to have announced the names of the different stations upon their line of railway upon the arrival of their train, in such a manner that persons using ordinary care will be apprised of the name of the station. And if you find and believe from the evidence that plaintiff's wife and children were passengers on defendant's train as alleged in plaintiff's petition, and that she was carried beyond the place of her destination, but that the defendants by its agents and employes did duly call out the name of the station, Ringgold, upon the arrival of said train, you will find for the defendant, unless you further find that before the train reached Ringgold, the conductor in charge of defendant's train assured the wife of plaintiff that she might rely upon him to notify her personally when the train reached Ringgold, and that she did rely upon said assurance, and that she did not hear the name of the station called out, and did not know when the train passed the station, and that by reason of being carried beyond her destination, the wife of the plaintiff suffered physically and mentally as alleged in plaintiff's petition, and that the injuries, if any, were occasioned directly and proximately by the negligence of the defendant's

agents and servants, then you may find for plaintiff such damages as the evidence may show to be fair and reasonable to him for damages as alleged in his petition."

That portion of the foregoing instruction which imposed the duty upon the carrier, on account of the promise of the conductor to give personal notice to Mrs. Boyles of the arrival of the train, we hold, under the condition of the evidence in this case, to be erroneous.

Ordinarily the duty of a conductor as such toward a passenger has ceased when the carrier has transported the passenger in safety to his point of destination, has announced the arrival of the train at the station, and has afforded reasonable time and opportunity for the passenger to leave the cars. Hutchinson on Carriers, sec. 614. If the conductor undertake to do more, as to awaken a sleeping passenger and to notify him personally, it becomes a mere personal undertaking as between the conductor and the passenger, an undertaking beyond the scope of the conductor's duty, and in no sense the obligation of the carrier. "So, it is said that it is ordinarily no part of the carrier's duty to see that passengers are waked when the train reaches their destination, and that the company is not bound by the conductor's promise to so awaken the passenger. Exceptional circumstances might, however, impose the duty." Hutchinson on Carriers, sec. 617b.

The Court of Civil Appeals for the Fifth District (Railway v. Kendrick, 32 S. W. Rep., 43) quotes with evident approval the decision of the Supreme Court of Mississippi, Sevier v. Railway, 61 Miss., 8, holding this rule applicable in case of a promise made by a conductor to a passenger asleep, even though his sleep is due to sickness. We are not disposed to give the rule so broad an application. We think that circumstances involving the consideration of age, sex, or physical infirmity, may bring that within the scope of the conductor's duty toward a passenger which would otherwise be beyond the limit of such obligation. Hutchinson on Carriers, sec. 670; Railway v. Finley, 79 Texas, 85; 15 S. W. Rep., 266.

But to create the exception, it should, we think, be made to appear that the conductor knew the facts which give rise to its application. If, in this instance, the conductor, knowing the helpless condition of Mrs. Boyles, due to the sickness of her child, and recognizing the necessity of her giving exclusive attention to it, had promised to give her personal notice when the train reached Ringgold, and to assist her in alighting, we are of opinion that such a promise would be at least within the apparent scope of his power as a conductor, and that non-compliance with it would be binding on the company. It will be noted, however, that this question of the conductor's promise to her was submitted without reference to his knowledge of the sickness of the child, or of the necessity that might require the mother's exclusive attention to its needs. We can not say that the existence of such knowledge was undisputed, because the testimony of the conductor imports his utter ignorance of the child's condition.

In the instruction already quoted the court submits, under the allegations of the plaintiff's petition, and upon evidence admitted over defendant's objection, as an element of damage to be considered by the jury, the fact that the plaintiff had made arrangements with his father-in-law to meet his wife at St. Jo, thence to transport her and her child to the wife's sister in the country, where his sick child was to receive such medical attention as it seems the sister was peculiarly qualified to give. Whether in fact the father-in-law was at St. Jo in accordance with this arrangement does not appear from the record. It might well be said that the charge in this respect was without evidence to support it; but had it been proven, it would not be a matter for the proper consideration of the jury, under the pleading and evidence in this case. Where a carrier has violated its contract with the passenger by carrying the latter beyond his destination, those damages may be recovered which may compensate the passenger "for the discomfort, inconvenience, sickness, expenses, costs and charges which are shown by the proof in this case to have been the direct and proximate, natural and probable result of the carrier's breach of duty." Railway v. Terry, 62 Texas, 384.

Only such a result should be regarded as "direct and proximate, natural and probable" as could be held to be within the contemplation of the parties to the contract the breach of which is complained of. Pullman Car Co. v. McDonald, 2 Texas Civ. App., 325. Here the fact is neither averred nor proven that the carrier knew that the plaintiff's wife intended to go to St. Jo, or that the carrier knew that she was to be met by her father at the latter place, to be taken to her sister's home, or that failing to meet her father, and being thereby deprived of the power of reaching her destination from the morning to the afternoon or evening of the same day, she would suffer keen anguish and disappointment as a result, or that she would be deprived of the medical treatment to be administered by her sister to the sick child.

The record suggests that the action of the court in the respect here indicated was probably seriously detrimental to the rights of the appellant.

The judgment is reversed and the cause is remanded.

<i>Reversed and remanded.</i>

Delivered November 30, 1895.