90 489
91 315

90 489
102 ³433
102 ³582

L. B. ATKINSON, Respondent, v. THE PACIFIC RAIL-
WAY COMPANY, Appellant.

**Kansas City Court of Appeals, December 2, 1901.**

-1. **Passenger Carriers: PUTTING OFF AT SAFE PLACE: CARE.**
A passenger carrier must use the utmost care and skill, and put the
passenger off at a safe place.

2. ———: **AWAKING SLEEPING PASSENGERS: ANNOUNCING
STATION.** In some jurisdictions it is held that if the carrier an-
nounces the station in the usual way he is not required to wake a
sleeping passenger at his destination.

3. ———: **PUTTING PASSENGER OFF: PHYSICAL CONDITIONS:
MORAL SURROUNDINGS: SCIENTER.** The carrier is presumed
to know the physical conditions at the place where he puts the pas-
senger off and is liable for injuries resulting therefrom; but he does
not have to investigate the moral surroundings of the place.

4. ———: ———: **EVIDENCE: DEMURRER: PROXIMATE CAUSE.**
The defendant failed to awake plaintiff at the station at Sedalia
and carried him about a mile beyond and put him off, directing him
to the station. He was robbed and beaten on the way. The evidence
failed to show that defendant's agents had knowledge of the moral
repute of the neighborhood: *Held,* that a demurrer must be sus-
tained to the evidence.

Appeal from Pettis Circuit Court.—*Hon. Geo. F. Longan,*
Judge.

REVERSED.

*Wm. S. Shirk* for appellant.

(1) Defendant's liability in this case is bottomed en-
tirely upon the allegation, "that the defendant and its officers,
and servants managing said train, knew that it was not a safe

place, and knew that the place where said train stopped, and that part of said city through which plaintiff would have to pass in reaching said passenger station, and in reaching a safe place, was infested by footpads, thieves, robbers and thugs and where people were liable to be robbed. Without this allegation the petition states no cause of action, for without this knowledge the conductor was not bound to anticipate that the plaintiff would be robbed. Hicks v. Railroad, 46 Mo. App. 304; Sira v. Railroad, 115 Mo. 127; Putnam v. Railroad, 55 N. Y. 108; Baxter v. Roberts, 44 Cal. 187; Brown v. Railroad, 20 Mo. App. 222; Clark v. Railroad, 39 Mo. 184; Francis v. Transfer Co., 5 Mo. App. 7; Henry v. Railroad, 76 Mo. 288; Hoag v. Railroad, 85 Pa. St. 292; Railroad v. Trich, 34 Am. and Eng. Railroad Cases, p. 551; Thompson on Carriers of Passengers, p. 105, note 6; Hutchinson on Carriers, sec. 497, latter part on page 400. (2) The well-established rule in cases of this kind is, that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that it was such as might or ought to have been foreseen in the light of the surrounding circumstances. Railroad v. Kellogg, 94 U. S. 469; Hoag v. Railroad, 85 Pa. St. 653; 2 Thompson on Neg., 1085, sec. 2; Philips v. Dickinson, 85 Ill. 11; Pollock on Torts, 36, 37; 2 Thomp. on Neg., 1083, note; Henry v. Railroad, 50 Cal. 183; Chicago v. Stow, 42 Ill. 174; Railroad v. Snyder, 18 Ohio St. 399; Campbell v. Stillwater, 50 Am. Report 567, and note, where numerous authorities are collected; Railroad v. Head, 15 S. W. 504; Hutchinson on Carriers, sec. 617; Coenwell v. Railroad, 85 Tex. 96, 19 S. W. 1017; Wilson v. Railroad, 68 Miss. 9. (3) The trainmen were under no obligations to awaken plaintiff Atkinson, nor to keep him awake after awakening him. If he slept

past his destination and was carried by, for that reason alone he has but himself to blame. Sevier v. Railroad, 61 Mass. 8; Railroad v. Alexander, 30 S. W. 1113; Railroad v. Kendrick, 32 S. W. 42; Railroad v. Boyles, 33 S. W. 247; Railroad v. McCullough, 33 S. W. 285.

*Louis Hoffman* and *Sangre & Lamm* for respondent.

(1) It is elementary law, needing no extended citation of authority, that appellant company owed the duty to respondent, a passenger, to deliver him at a station, a place of safety. Warden v. Railroad, 35 Mo. App. 631; Huelsenkamp v. Railroad, 37 Mo. 538; Bryan v. Railroad, 32 Mo. App. 228; Clark v. Railroad, 39 Mo. 184; Railroad v. Cantrell, 37 Ark., 519; s. c., 40 Am. R. 105; R. S. 1899, sec. 1074; Railroad v. Johnson, 19 So. R. 51; Winkler v. Railroad, 21 Mo. App. 99; Brown v. Railroad, 54 Wis. 342. (2) The first element of respondent's damage was the time it took and the inconvenience he was put to in traveling back to his station in the darkness. This by itself was an actionable wrong, properly pleaded in the petition and submitted to the jury in respondent's first instruction. This, we submit, is well-settled law. Strange v. Railroad, 61 Mo. App. 586; Trigg v. Railroad, 74 Mo. 147; Stevens v. Smith, 29 Vt. 160. (3) The next element of damages is the assault, robbery and attendant results. Brown v. Railroad, 20 Mo. App. 222, cited by appellant; Page v. Buckport, 64 Me. 51. (4) The intervention of the act of an independent agent will not always arrest causation, so as to relieve the first wrongdoer from the consequences thereof, where such intervening act is of a character which a reasonably prudent person would ordinarily anticipate or expect to flow from his act as a natural or probable result. McDonald v. Snelling, 14 Allen (96 Mass.), 290; Brown v. Railroad, 20 Mo. App. 222; Morrison

v. Railroad, 27 Mo. App. 418; 1, Sutherland on Damages
(1 Ed.), p. 70; Ibid, page 64; Page v. Buckport, 64 Me.
51; Lake v. Milliken, 62 Me. 240; Vandenburg v. Truax, 4
Denio 464; the celebrated Squib case (Scott v. Shepherd, 2
W. Bl. 892); Isham v. Dow's Est., 70 Vt. 588 (see notes to
same case in 45 L. R. A., p. 87 and post); Forney v. Geld-
macher, 75 Mo. 113; Nagel v. Railroad, 75 Mo. 653; Weick
v. Lander, 75 Ill. 93; Sira v. Railroad, 115 Mo. 127; Bax-
ter v. Roberts, 44 Cal. 187; Patton v. Railroad, 32 Wis. 525;
White v. Railroad, 5 Dillon, 428; see the learned notes to
Isham v. Dow, supra, by the editor of L. R. A., vol. 45, p.
87, and post; Smethurst v. Prop'rs of Ind. Cong. Church, 148
Mass. 261; Weich v. Lander, 75 Ill. 93; Binford v. Johnson,
82 Ind. 426; Wellington v. Downer Oil Co., 104 Mass. 64;
Sheridan v. Railroad, 36 N. Y. 39; Bloom v. Ins. Co., 97
Ind. 478; Hughes v. McDonaugh, 43 N. J. L. 459; Derry
v. Flitner, 118 Mass. 131; Eads v. Railroad, 43 Mo. App.
546; Farber v. Railroad, 116 Mo. 81; Hinds v. Railroad, 53
Pa. St. 512; White v. West Memphis Packet Company, 38
L. R. A. 427; Flint v. Transportation Co., 34 Conn., 554;
s. c., 80 U. S. (15 Wallace) 3; Winkler v. Railroad, 21 Mo.
App. 99; Evans v. Railroad, 11 Mo. App. 463; Warden v.
Railroad, 35 Mo. App. 631; Adams v. Railroad, 100 Mo.
555; Patten v. Railroad, 32 Wis. 525; Johnston v. Railroad,
19 (Ala.) S. Rep. 51; Sira v. Railroad, 115 Mo. 127; Con-
nell v. Railroad, 83 Va. 44; Spohn v. Railroad, 101 Mo.
417; s. c., 87 Mo. 74; 5 Am. and Eng. Ency. of Law (2 Ed.),
notes on pp. 553-4-5; Sherley v. Billings, 71 Ky. 147; God-
dard v. Railroad, 57 Me. 202.     (4) Was it right to leave the
jury to say whether the assault and robbery were the proxi-
mate and legitimate result of appellant's negligent, reckless,
wanton and cruel act? We say it was. Clemens v. Rail-
road, 53 Mo. 366; Adams v. Railroad, 100 Mo. 555 (see
Barclay's opinion concurring with Black and Brace, p. 570),

Railroad v. Kellogg, 94 U. S. 469; White v. Railroad, 5 Dillon 428; Ehrgott v. City of N. Y., 96 N. Y. 264; Sloan v. Railroad, 111 Cal. 668; Seckinger v. Manufacturing Co., 129 Mo. 590; Railroad v. Kemp, 61 Md. 74; Brown v. Railroad, 54 Wis. 342; Hart v. Bridge Co., 80 N. Y. 622; Patten v. Railroad, 32 Wis. 525; Dunn v. Railroad, 21 Mo. App. 188; Evans v. Railroad, 11 Mo. App. 463.

BROADDUS, J.—The substantial allegations of the petition are: That on the thirteenth day of August, 1896, the plaintiff took passage on the defendant's train at St. Louis, Missouri, for Sedalia and from thence to Lexington, Missouri, having paid his fare for transportation to defendant; that while en route he informed defendant's agent in charge of the train that his destination was Sedalia, where he would make connection with defendant's connecting train for Lexington; that when he arrived at the station of Sedalia, where he would have to change cars for Lexington, he was asleep; that after the train had passed the station of Sedalia about a mile he was awakened by defendant's agents and informed that he had arrived at Sedalia, and was hurried from the train; that he was a stranger to the place and did not know of the location of defendant's passenger depot, and did not know where the train then was; that said place where he got off was not a passenger station, and was not a safe place for the plaintiff to alight, but was about one mile west of defendant's passenger depot, at a place away from lights and dwellings and in a part of the city notoriously infested by footpads, thieves and robbers; that he was made to believe from the acts and words of the defendant's agents that he was at the passenger station when he permitted himself to be hurriedly ushered from said train; that defendant's officers and servants conducting said train knew that the train was not at the station and knew that plaintiff was ignorant of that fact—and that they knew that

it was not a safe place at which to put him off; and that defendant knew, or by the exercise of reasonable care and caution could have known, that part of the city through which plaintiff would have to pass to reach the said passenger depot was infested with thieves and robbers; and that before plaintiff could realize that he was not at the passenger station, or at a safe place, said train departed leaving him alone and unprotected at night in said dangerous locality; and that upon the disappearance of the train he was assaulted, beaten and robbed, by two unknown robbers or footpads, of $35 in money and a pocket knife worth $1, that his clothes were torn and injured to the extent of $5 and that he was wounded and suffered greatly in mind and body. He laid his actual damages at $1,000, and claims $1,400 punitive damages.

The answer was a general denial. There was a trial before a jury which resulted in a verdict of $600 damages, upon which the court rendered judgment. The defendant has appealed.

The defendant contends that under the pleadings and evidence the plaintiff was not entitled to recover; that the court erred in the giving and refusing of instructions and that the verdict is the result of prejudice and is grossly excessive.

In a general way the allegations of the petition were sustained by the evidence on the part of the plaintiff. There is a difference in the testimony as to what occurred at the time plaintiff says he was awakened and told to get off the train after it had passed the station at Sedalia. But it was clearly shown that the plaintiff was carried beyond the station something near a mile, but still within the limits of the city; that he was a stranger to the place, had been sick and at the time was not very vigorous; that he contemplated getting off at the station in Sedalia where he was to make connection with defendant's train to his ultimate destination, Lexington; that where plaintiff got off he could see the light at the station; that

while he was feeling his way along the track in the direction of said station he was set upon and robbed, as stated, and assaulted to a slight extent. That he suffered from alarm may be safely conjectured from the circumstances of his situation. There was a conflict in the evidence as to whether plaintiff was asleep or awake when the train reached the station, but his evidence is to the effect that he was awakened after the station was passed. There was evidence tending to show that the locality where defendant alighted from the train was in bad repute. One witness says it was called "bad lands," that the worst people in town stayed there, rogues and every sort of thief, and that it had been running so for years. It does not appear that defendant's agents in charge of the train had actual knowledge or information of the disreputable character of said locality.

The defendant contends that under the facts shown by the evidence, the plaintiff was not entitled to recover.

It is well-settled law that a railroad company owes it as a duty to the passenger when he arrives at his destination to put him off at a safe place. McGee v. Railway, 92 Mo. 208; Warden v. Railway, 35 Mo. App. 631. It is also equally as well-settled law that the duty the carrier owes to the passenger is that of the utmost care and skill. Huelsenkamp v. Railway, 37 Mo. 537; Bryan v. Railway, 32 Mo. App. 228; Hutchison on Carriers, sec. 502. There are numerous recent decisions to the same effect which it is not deemed necessary to note.

The foregoing proposition that the carrier is bound to put the passenger off at a safe place, and in doing so must exercise the highest degree of skill and care, being conceded, then the application to the facts in this case is not a difficult matter. But as will appear, there is another principle involved which determines the question of the defendant's liability. The defendant contends that its act in putting plaintiff off the

train at the place in question was not negligence.   If it is true, as testified to by the plaintiff, that the defendant's agents led him to believe he was at the station, whereas, in fact, he was not, it was misleading and, under the circumstances, a positive wrong; for the plaintiff might with good reason have preferred some other course.   He might have desired to re-main on the train so that he could have reached his destination in some other way.   It was therefore negligence.

It has been held in Arkansas, Mississippi, Georgia, and other States, that it is not negligence upon the part of the car-rier to fail to awaken a sleeping passenger when he arrives at his destination.   If the agent of the carrier announces the station upon the arrival of the train in the usual way or man-ner it has discharged its whole duty.   Railway v. Alexander, 30 S. W. 1113; Railway v. Boyles, 33 S. W. 247; Levier v. Railway (Miss.), 48 Am. Rep. 74; Munn v. Railway, 71 Geo. —.   However, as has been said, the passenger would have the right to know, as he was not a trespasser, where he was being put off, as he might have some choice in the matter.

Conceding all this, the defendant contends that it is not liable, for the reason that the injury was not the proximate cause of the act complained of.   But we do not understand this to be the rule in all cases as to the test of liability.   War-den v. Railway, supra, and McGee v. Railway, 92 Mo. 208. In these two cases the injury did not occur while the pas-senger was alighting from the train but afterwards, by reason of the unsafe physical condition of the locality where the pas-senger alighted.   The defendant's liability must be deter-mined by another and different rule, viz.:   "Every person who does a wrong is at least responsible for all the mischievous con-sequences that may reasonably be expected to result under ordinary circumstances from such misconduct."   Rigby v. Hewett, 5 Exch. 243.   If there is another and different rule we are not aware of it; nor do we believe there can well be

another, as we can not conceive of anything more in harmony with reason and justice than the rule quoted. It is indeed an axiom. It is by this rule that the liability of the defendant must be determined.

The defendant was carried beyond the station, not by reason of the fault of the carrier, but because he was asleep. He was awakened and, he says (and this statement must be taken as true in view of defendant's demurrer to plaintiff's case), that he was told that he was at Sedalia, and was then hurried from the train by the defendant's employees. Had the physical condition of the locality where he alighted been unsafe and dangerous by reason of ditches, embankments, bridges, cattle guards or like things, and the plaintiff had been injured by reason thereof in making his way to the station, the defendant would have been liable under the authorities, supra—for the law presumes that the defendant's agents are familiar with the immediate physical surroundings of its tracks. The injury would have been within the reasonable expectation of the wrongful act of putting him off the train at an unsafe place. But can it be claimed that the injury to the plaintiff could have been within the reasonable expectation of the act complained of?

It is true, that the place had an unsavory reputation, but it was not shown that defendant's agents in charge of the train knew of it. It is alleged in the petition that they knew the place was unsafe, or by the exercise of reasonable care and caution could have known that that portion of the city through which plaintiff would have to pass to reach the station, was infested with thieves and robbers. If it be true that defendant's agents knew the place was unsafe on account of the locality being infested with thieves and robbers, it would be liable. it would not follow as a necessary sequence that it would be liable for what they might have ascertained in that respect by

the exercise of care and caution, because it was not one of those things defendant was required to know as was the physical condition and surroundings of its tracks or other things connected with the business in which it was engaged. The defendant had no authority to exercise police powers in the city of Sedalia, and as a consequence would only be liable for actual knowledge of things existing and not for what it might have learned by investigation, because it was not required to investigate. Could it therefore have been reasonably expected, under the facts in proof, that the plaintiff would be robbed on his way to the station? Ordinarily would it be expected? Certainly not. It was an occurrence that might have happened anywhere. A person may be robbed in a station, on the train, in his home, at his plow in the field, on the highway, anywhere however careful he may be, without the fault of the government, of the city, or of the state.

Under the rule of law applicable to the case, we think the defendant's demurrer to the evidence should have been sustained. With this view of the case all other assignments of error become unimportant.

The cause is reversed. All concur.