THE WESTERN RAILROAD COMPANY, plaintiff in error, vs. RICHARD YOUNG, administrator, defendant in error.

1. If the conductor of a railroad train agree to put a passenger off at a particular place, which is not a station or regular stopping place, it would be the duty of the conductor to stop the train at that place, so that the passenger could get off in safety. This rule would apply although the passenger had a ticket only to the last station passed before reaching the place at which he was to be put off.

2. If the agreement with the conductor was that the train would not be stopped, but its speed only slacked, it was not error in the court to charge the jury that the speed of the train should be so checked that the passenger could get off safely. Nor was it error to give such a charge as a qualification to a request of defendant, "that if the train did slack up so that plaintiff might have gotten off safely, then although plaintiff was injured in getting off, defendant is not liable in damages."

3. Under the facts of this case it was not error in the court to refuse to charge the jury "that if the train slacked up so that plaintiff might have gotten safely off, it was for plaintiff to determine whether he would get off or not; and if he did get off, and in so doing was injured, he is not entitled to recover."

Railroads. Conductor. Negligence. Before Judge JAMES JOHNSON. Muscogee Superior Court. October Term, 1872.

Allen Andrews brought case against the Western Railroad Company for $5,000 00 damages, alleged to have been sustained by him on account of the negligent running of its cars by the defendant. The general issue was pleaded.

Plaintiff was introduced and testified substantially as follows: He had bought a ticket to the steam-mills station on said road; he was traveling with a friend. The cars did not stop at said point, and, upon inquiry, witness was told that the conductor would put them off at a crossing nearer the place to which he was going; when the cars approached the crossing witness was notified of the fact by his friend; they went to the rear of the cars; the train having slacked up, his friend got off; witness was standing on the bottom step on one foot, waiting for cars to stop, that he might get off; while in this position the whistle blew " off breaks," the car apparently jumped forward, jerking him off the steps, throwing his body suddenly around while his weight was on his foot, wrenching his right knee out of place, throwing him violently on the ground, greatly bruising his hip and side. He remained there until the evening train came along, and tried to get them to bring him back to Columbus, but the conductor refused to stop and take him on. He hired men to carry him, on a litter, back to the steam-mill; next morning was brought home, where he was confined to bed over two months; was attended by Dr. Billing, and paid him $22 00 or $23 00, to which was added medicine, $3 00; was unable to transact any business until the middle of July; was a mechanic; received $4 00 per day when he was well; could not get about very well now, nor bear his weight long at a time on that leg.

On cross-examination, stated he had never stepped off a train when in motion.

One Renfroe corroborated substantially what plaintiff had sworn; that he was a mechanic; that plaintiff's work was worth $4 00 a day. Others testified plaintiff was worth $3 00 to $4 00 a day. Plaintiff was sixty or sixty-five years of age.

Defendant introduced one Hughes, who testified that he was conductor of the train on which plaintiff was passenger at the time he was injured. Plaintiff was with a white man, and both were going to look at land, at a point beyond steam-mills, a regular stopping place for trains on said road; before

The Western Railroad Company *vs.* Young.

arriving at steam-mills the white man stated to witness that he and plaintiff wished to go to a point beyond steam-mills, and get off at a crossing, and asked witness to put them off there; witness replied, that as the train was behind time he could not stop, but would slack up at the crossing; plaintiff and white man had tickets only to steam-mills, and paid nothing for riding beyond steam-mills; they went on beyond steam-mills; as train neared crossing it slacked up, and witness went back through the cars to tell white man and plaintiff to get ready to get off; both had gone out of the car, and were standing on lowest step of the car, one on one side, and one on the other; the white man got off a few yards from the road; plaintiff, as soon as he saw white man off, attempted to get off himself, and in doing so fell and was injured. Plaintiff, in getting off, stepped in rather an opposite direction from that in which the train was moving; after plaintiff was off witness pulled bell-rope, and train went on; the train was moving at the rate of about one and a half miles an hour when plaintiff got off.

The court charged, "that if plaintiff had bought a ticket to steam-mills, and it was afterward agreed to put him off at the crossing, this was as if he had originally bought a ticket to the crossing; that it was the duty of defendant so to manage the cars that the plaintiff could get off in safety, even if they had to stop the train; and if defendant failed to slack up so that an old man could get off in safety, and in endeavoring to get off he was injured by the neglect of defendant, then defendant was liable to plaintiff for the injury from such neglect." To which charge defendant excepted.

Defendant requested the court to charge, "that if the defendant agreed to take plaintiff to steam-mills, and put him off there, but plaintiff requested conductor to take him to a point further on the road where there was no regular stopping place, and the conductor agreed to do so, but would only slack up, and not stop, then if the train did slack up so that plaintiff might have gotten off safely, then although plaintiff was injured in getting off, defendant is not liable in damages."

The court refused the charge as presented, but qualified it by saying "that the train must slack up so that plaintiff could get off safely." Whereupon defendant excepted.

Defendant requested the court to charge "that if the train slacked up so that plaintiff might have gotten off safely, it was for the plaintiff to determine whether he would get off or not, and if he did get off, and in doing so was injured, he is not entitled to recover." The court refused to charge as requested, and defendant excepted.

The jury returned a verdict for the plaintiff for $591 00.

Error is assigned upon each of the aforesaid grounds of exception.

Allen Andrews having died while the case was pending in the supreme court, his administrator, Richard Young, was made a party plaintiff in his stead.

PEABODY & BRANNON; J. F. POU, for plaintiff in error.

INGRAM & CRAWFORD, for defendant.

TRIPPE, Judge.

1. The case of *The Georgia Railroad and Banking Company vs. McCurdy*, 45 *Georgia*, 288, we think, determines the first point made in the case. If the conductor of a railroad train agree to put a passenger off at a particular place, whether it be a regular station or stopping place or not, it would be the duty of the conductor so to stop the cars at that place that the passenger could get off in safety. It cannot affect the rule that the passenger had a ticket only to the station last passed, before reaching the place at which he was to be put off. The conductor had the power to demand and receive any additional fare accruing for carrying the passenger to a point beyond the station to which his ticket entitled him to be carried. And as was said in the case above referred to, "if he were to take fare for four miles he would be bound to put his passenger off there:" See 14 Howard's Reports, 468; 16 *Ibid.*, 260, 469; 3 Allen, 18.

The Western Railroad Company *vs.* Young.

2. The chief contest in the argument was whether the court was right in using the word "could" in the charge instead of the word "might," as he was requested. The charge, in substance, was that the cars should have been stopped or "slacked up," so that the plaintiff "could get off in safety." The court was requested to charge that if the train did slack up so that plaintiff "might have gotten off safely, then, although plaintiff was injured in getting off, defendant is not liable." The court used the proper term. "Might" rather implies *was possible, within the limits of chance.* "Could" more strongly signifies *was able, had the power.* Certainly a conductor has not discharged his duty who so checks his speed that it is possible for a passenger to get off safely. But whether I am right or wrong in this criticism or explanation of these two potential mood prefixes which are often indiscriminately used, the difference between the two is hardly potential enough to constitute a legal error sufficient to set aside a verdict, reverse a judgment and grant a new trial.

3. The second request to charge made by defendant below is also obnoxious to the criticism already made on the word "might" in this connection. But it goes farther. It is "that if the train slacked up so that plaintiff might have gotten off safely, it was for him to determine whether he would get off or not, and if he did get off, and in so doing was injured, he is not entitled to recover." The conductor was standing close by, he saw plaintiff and the friend he was traveling with standing on the steps of the car ready to get off. That friend did get off. The cars were still in motion and did not stop. The conductor neither gave warning not to get off, or notice that the cars would stop or still further slack up. In fact he knew the cars would not stop. The passenger took the only chance he had. He tried to follow his friend, the conductor standing by. All this makes a case as strong as that of *The Georgia Railroad vs. McCurdy, supra,* and we do not see anything that calls for a reversal of the judgment of the court below.

Judgment affirmed.