## NUNN *vs.* THE GEORGIA RAILROAD.

Where a passenger on a railroad train holds a ticket to a given point, it is the duty of the company to stop the train at the point of destination a sufficient length of time to allow the passenger to leave it with safety to his life and person ; and if he is carried beyond his stopping place, by no fault of his, but by the failure of the company's agent to do his duty in that respect, he may recover any damage he may sustain. But it is not necessary to the performance of the ordinary duties of the conductor, in putting passengers off the train, that he should give them any other than the customary warning and opportunity to avail themselves of it. A mere voluntary promise on the part of a conductor to wake a drowsy passenger, and a failure so to do, whereby the passenger was carried beyond his destination, furnishes no case for recovery against the railroad.

(*a.*) How far a custom on the part of a conductor of assisting unattended females, children or infirm persons, known or which may be presumed to be known to the company, will modify these rules, is not decided.

February 2, 1884.

Railroads. Damages. Negligence. Contracts. Custom. Before Judge HAMMOND. Dekalb Superior Court. March Term, 1883.

Reported in the decision.

J. C. REED, by brief, for plaintiff in error.

J. B. CUMMING; HILLYER & BROTHER, by J. H. LUMPKIN, for defendant.

HALL, Justice.

The plaintiff had a season ticket, commonly known as a "book," which entitled him to travel on the cars of the defendant company from Atlanta to his home at Clarkston, a point between the regular stations on the road at Decatur and Stone Mountain, at which trains stopped to put off and take on passengers when so notified. On the night in question, he took passage at Atlanta for his home, and

when he delivered the conductor his ticket, he informed him that he had lost much sleep the night before, and would probably sleep on his journey, and requested him, when he reached his destination, to awaken him and put him off, which the conductor promised to do. He slept until he passed beyond Stone Mountain, and below there was aroused, and informed that he had passed his home. Here he left the cars in the night, and walked rapidly in the dark a distance of seven or eight miles to his home, which he reached between 11 and 12 o'clock. During this walk he labored under considerable mental anxiety, on account of the situation of his wife, whom he had left in the morning quite sick, and gone to Atlanta to procure medicine for her; had obtained it, and then had it with him. He reached home in time to relieve her with the medicine he carried. He suffered from considerable soreness in consequence of his walk; was not able to do full work, and remained at home next day, and thereby lost his wages, amounting to two dollars. It did not appear from the evidence that the train was not halted at Clarkston a sufficient length of time to enable the plaintiff to get off, or that the place was not called in the customary manner; nor was it shown by any regulation of the company that it undertook that the conductor at each stopping-place should go through the train and see that every passenger was safely passed out of the cars. It was shown that the conductor, when specially applied to, had in some instances performed this service for passengers. It was incum bent upon the plaintiff to make out his case, and to show that he had been damaged by a violation of his contract with the company. In the opinion of the superior court, he failed in this, and on motion a non-suit was awarded at the close of the testimony, first, because the proof failed to show that it was customary for the conductor to go through the train and wake up a passenger who happened to be asleep. Secondly, because no breach of plaintiff's contract with the defendant was shown, or that there

was any proof of a failure to stop at the designated point sufficiently long for the plaintiff to get off the cars. Thirdly, because it did not satisfactorily appear whether the loss of the day's work, which was the only damage proved, was caused by the failure to put plaintiff off at home, and by the long walk he took in consequence of being carried beyond it, or by other causes, which might have contributed to that result, such as the loss of sleep on the previous night.

In determining the propriety of this ruling, it will be essential to consider whether the conductor's promise to wake plaintiff was included in the company's contract to transport him from Atlanta to Clarkston; if it was, and there was any failure in that respect, then there was a breach of the agreement, and he had a right to recover at least nominal damages; if it was not, then a failure in regard thereto was *damnum absque injuria*, his rights were not violated, he was not entitled to recover, and the non-suit was properly awarded.

"The sale of a ticket to a passenger is a contract to carry him according to the reasonable regulations of the company, and he is presumed also to contract with reference to them." Pierce Am. Rwy. Law, 491. It likewise seems a necessary implication from this rule, that the train should be stopped at the point of destination a sufficient length of time to allow the party to leave it with safety to his life and person (51 *Ga.*, 489; 45 *Ib.*, 288); and if he is carried beyond his place, by no fault of his, but by the failure of the company's agent to do his duty in that behalf, he is entitled to recover any damage he may sustain. *Ibid.*

It is insisted that if not directly bound to perform such acts as the present, the conductor, as the company's servant, was impliedly authorized to bind the company by this promise, and his failure to perform it would render the company liable. This is likened to the ability of the servant to contract debts for the master, growing out of the

peculiar nature of the business, and from which authority is necessarily implied, in order to carry out the agency. Wood's Master and Servant, §§263, 267, 268, are cited to this latter effect. But we cannot reach that conclusion. It was certainly not necessary to the performance of the ordinary duties of the conductor in putting passengers off the train that he should give them any other than the customary warning, and opportunity to avail themselves of it. The regulations under which he acted required nothing more at the hands of the company; its contract was made with that view, and any requirement in excess of it would be a departure from the terms of the contract. To this additional act the company did not assent.

In the Pennsylvania Railroad Company vs. Kilgore, 32 Penn. St. R., 294, it is said: "We do not think it was the duty of the conductor to go through the train and see that every person was safely passed out of the cars. It was his duty to stop the train sufficiently long to enable them to get out without damage to their persons or their lives; and if he did not, he was derelict in his duty."

In New Orleans, Jackson and Great Northern Railroad Company vs. Statham, 42 Miss. R., 607, 613, the Supreme Court of that state applied this principle to sick and impotent persons. Shackleford, C. J., who delivered the opinion, declared that " railroad cars were not traveling hospitals, nor their employés nurses. Sick persons have the right to enter the cars of a railroad company ; as common carriers of passengers, they cannot prevent their entering their cars. If they are incapable of taking care of themselves, they should have attendants along to care for them, or to render them such assistance as they may require in the cars, and to assist them from the cars at the point of their destination. It is not the duty of conductors to see to the debarkation of passengers. They should have the stations announced; they should stop the trains sufficiently long for the passengers for each station to get off. When this is done, their duty to the passengers is

performed. All assistance that a conductor may extend to ladies without escorts, or with children, or to persons who are sick, and ask his assistance in getting on and off trains, is purely a matter of courtesy, and not at all incumbent upon him in the line of his public duty."

See, also, the able and learned opinion of Hardy, C. J., in Southern Railroad Company *vs.* Kendrick, 40 Miss. R., 374, which covers and effectually disposes of every question considered here. These cases proceed upon the reasonable ground that passengers are vigilant to perform their parts of the undertaking which they set out to accomplish, and which is only to be done by their own exertions. It results also from the difference of the obligations of carriers of goods and of passengers; in the former case, the obligation is to carry and deliver; in the latter, it is simply to carry and allow passengers sufficient time and opportunity to leave the vehicle. Hutchinson on Carriers, §614; Thompson's Carriers of Passengers, pp. 226, 227, and citations. As to duty of passengers to observe the known and obvious rules of the company in entering and leaving cars, 2 Redf. Am. Rwy. Cas., 536, 540–542; 3 Am. and Eng. R. R. Cases, 340.

How far a custom upon the part of conductors, known, or which may be presumed to be known to the company, to assist unattended females, or children, or infirm persons, will modify these rules, we do not now decide, as there is nothing in this case falling within such a principle. This was a drowsy man, traveling a distance of ten miles; he made no contract with the company to have him aroused, in case he should be asleep when he reached his destination; he relied upon the courtesy of the conductor to do him this kind office, as it seems he had on previous occasions done for him, and perhaps for some others. These exceptional and occasional instances afforded no evidence of a custom binding upon the company. The plaintiff failed to make out any case, and there was no error in sustaining the motion for a non-suit.

Judgment affirmed.