CHARLES NICHOLS v. THE CHICAGO & WEST MICHIGAN RAILWAY COMPANY.

*Railroad company—Duty to passengers—Injury while alighting from train.*

1. It is the duty of the conductor or brakeman on a passenger train to call out the stations, but not to awaken passengers;

it being the passenger's duty to keep awake if he wishes to alight.

2. The employés of a railroad company are not charged with the duty of assisting a passenger to alight, or of pointing out to him the proper place to alight, where they have no knowledge of his desire or intention to do so.

Error to Kent. (Burch, J.) Submitted on briefs January 19, 1892. Decided February 5, 1892.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*L. G. Rutherford* and *M. M. Houseman,* for appellant, contended:

1. The question of plaintiff's negligence was in dispute, and was for the jury; citing *Railroad Co. v. Van Steinburg,* 17 Mich. 99; *Hassenyer v. Railroad Co.,* 48 Id. 205; *Sheldon v. Railroad Co.,* 59 Id. 172; *Mynning v. Railroad Co.,* Id. 257, 64 Id. 93; *Nelson v. Mining Co.,* 65 Id. 288.

2. It was the duty of the defendant to provide a safe place at which the plaintiff could alight from the train: to provide sufficient lights to enable him to see; to warn him of any existing danger; and at any place where the cars are accustomed to stop, passengers have the right to suppose that the adjacent land admits of their getting safely out and in; citing *Edgerton v. Railroad Co.,* 39 N. Y. 227; *Hulbert v. Railroad Co.,* 40 Id. 145; *Taber v. Railroad Co.,* 71 Id. 489; *Brassell v. Railroad Co.,* 84 Id. 241; *Railway Co. v. Stutler,* 54 Penn. St. 375; *Railroad Co. v. Hendricks,* 26 Ind. 228.

3. Plaintiff was not negligent in falling asleep; and the fact that for that reason he was carried past Otia station did not relieve the defendant from the duty of giving warning, furnishing lights, and providing a suitable and safe place for passengers to alight at its regular station, West Troy junction; citing *Railroad Co. v. Carper,* 112 Ind. 26; *Railway Co. v. Powell,* 40 Id. 37; Patterson, Ry. Acc. 215; 2 Wood, Ry. Law, 1047; and calling out and stopping the train at such regular station was notice to the plaintiff that he might alight, from which he had the right to infer that he could alight in safety; citing *Railroad Co. v. Swift,* 26 Ind. 559; *Railroad Co. v. Hoagland,* 78 Id. 203; *Filer v. Railroad Co.,* 49 N. Y. 47; *Railroad Co. v. Cantrell,* 37 Ark. 519; *Fowler v. Railroad Co.,* 18 Va. 579;

*Hickey v. Railroad Co.*, 14 Allen, 429; *Railroad Co. v. Aspell*, 23 Penn. St. 147; *Railroad Co. v. Boyer*, 97 Id. 91; *Railroad Co. v. Horst*, 93 U. S. 291; Beach, Cont. Neg. § 23; 2 Wood, Ry. Law, 1121; and a conductor represents the company in the whole management of the train; he occupies the same position as a master of a ship; citing *Railway Co. v. Miller*, 19 Mich. 305.

*Smith, Nims, Hoyt & Erwin (M. J. Smiley,* of counsel), for defendant.

GRANT, J.   The first count of plaintiff's declaration alleges a contract between him and the defendant to safely and securely carry him from Newaygo to West Troy junction; the duty on the part of the defendant to stop at the latter station a sufficient length of time to allow him to alight with safety, and to provide sufficient lights, and a suitable and convenient place or platform; and charges a violation of this duty.

The second count also alleges a contract for conveyance between these two stations; that he paid the usual fare from Newaygo to a station called "Otia," where he intended to alight; that he was accidently carried by Otia; that he was ready and willing to pay his fare from Otia to West Troy junction, but did not, because no fare was asked or demanded, and he did not see the conductor.   It then alleges the same duty as in the first count, its violation, and consequent injury.

At the conclusion of the evidence, verdict and judgment were rendered for defendant by the direction of the court.

West Troy junction was in the woods.   There was a branch track or crossing at this point.   There were no inhabitants living there.   Trains were required to stop there, and their conductors were required to enter, in a book kept for that purpose, the time of the arrival of their trains.   This book was kept in a registry box, to which each conductor had a key.   A small building had

been erected for a depot, about 10 by 12. It was not used at the time, and no agent was kept there. There was about two feet of snow upon the ground. The snow had been thrown by the snow-plow from the track, thus forming a bank upon each side. It had rained two or three days before, had turned cold, and a thick crust of ice thus formed upon the snow. A path led from the track to the registry box, which had been trodden down by the conductors, when the snow was soft, when passing to and fro to register their trains. There were no passengers for West Troy junction. Aside from this path, there was nothing to indicate any use of the station, and the snow was unbroken upon the platform, and along the sides of the track. Plaintiff had informed none of the train hands that he desired to get off at this station. No one knew that he intended to get off, nor that he had alighted. It was not until the following day that any one upon the train knew that an accident had happened.

Plaintiff is the only one who knew or testified to the manner of the accident. So far as is material, his statement is as follows: He was employed at a logging camp about 6½ miles from Otia. He arose about 3 o'clock in the morning, which was his usual time, walked to the station, and purchased a ticket to Newaygo and return. He spent the day in Newaygo, taking the train on his return about 6 o'clock p. m. The conductor took up his ticket on his entering the train, and immediately after he went to sleep, having taken a seat in the smoking-car. He awoke once at a station 11 miles from Newaygo, went to sleep again before the train started, and did not awake until the train was approaching West Troy junction, about 16 miles beyond Otia. He was then evidently in a reclining position, with his head next to the aisle. He heard some one call out, "West Troy

Junction!" Being asked if that awakened him, he replied:

"Yes, or something hit me in the back. I don't know whether he pushed me, or went against me. I sat on the edge of the seat. He might have touched me accidently as he passed by."

He thinks this was the brakeman. Whoever he was, he went out through the rear door of the car, and plaintiff did not again see him. Plaintiff had a pair of shoes and a box, which he picked up, went to the platform at the rear of his car, stepped down on the steps, and, as the train stopped, jumped off on the opposite side of the track from the depot building. His feet slipped, he whirled around on his back, turned, and got about half or two-thirds way up, when the train started. Something—and he thought it was the steps—hit him, and knocked him down. He rolled over, grabbed hold of something, which he thinks was the brace under the wheels, was drawn along a few feet, was struck on the head and back by something, knocked loose, and the hind trucks ran over him, crushing his leg and arm. Plaintiff had been at this station before, and was familiar with the surroundings. On being asked by defendant's counsel why he got off on the side opposite the depot building, he replied:

"Well, sir; I thought—I did not think but what the train went to Troy as usual. That was my mind. I got up pretty quick from my sleep, and went out, and that was what came into my mind; and I stepped off on that side. I was aroused from my sleep, and it came to my mind first that that was the side to get off. I thought I had got to walk back afoot four miles, and I kept on thinking. I was fully aroused, so that I had my complete senses. I did not know the station was on the other side."

Under this state of facts, no liability attaches to defendant. No obligation rested upon the conductor or

brakeman to awaken the plaintiff at Otia. It was their duty to call out the station, and the duty of the plaintiff to keep awake if he desired to alight. None of the employés of the defendant knew that the plaintiff desired to alight, or that he intended to do so. They therefore had no duty to perform towards him in assisting him to alight, or in pointing out the proper place for him to do so.

It is unnecessary to discuss what duty the defendant would have owed the plaintiff if he had been traveling beyond his station without paying his fare with the knowledge and consent of the conductor. It is sufficient that neither the conductor nor brakeman knew it, and, as between the defendant and plaintiff, there was no legal obligation resting upon the conductor to know that the plaintiff was carried beyond his station, or that he was riding without payment of fare, or that he intended to alight where he did. Where railroad companies have no passengers on board their trains for stations like that in this case, it is too clear for argument that their employés, in charge of the trains, owe no duty to any passenger choosing to alight there until they have been notified of his intention to do so. Had plaintiff notified defendant's employés of his desire to alight, the presumption is that he would have been assisted, and enabled to alight with safety.

Judgment is affirmed.

The other Justices concurred.