JOSIE KRAL v. BURLINGTON, CEDAR RAPIDS & NORTHERN RAIL-
WAY COMPANY.[1]

February 3, 1898.

Nos. 10,854—(246).

**Railway — Stopping Train—Injury to Passenger Alighting — Negligence—Proximate Cause.**

Although a railway company stops its train at a station a reasonable length of time to enable a passenger to get off, and he neglects to do so, yet if it again stops the train, and invites him to get off at another place, it is bound to exercise proper care to enable him to get off in safety, and if, by reason of its neglect to do so, the passenger is injured, such negligence is the proximate cause of the injury.

**Same—Physical Disability.**

And, although the injury to the passenger is increased by reason of some prior physical infirmity or disability under which he was laboring, nevertheless the negligence of the company is the efficient proximate cause of the injury.

**Same—Sufficiency of Evidence.**

Evidence *held* sufficient to justify the jury in finding that defendant's servants were negligent.

[1] Reported in 74 N. W. 166.

Appeal by defendant from a judgment in favor of the plaintiff for $815.22 entered in the district court for Freeborn county after a trial before Whytock, J., and a jury. Affirmed.

*S. K. Tracy* and *W. E. Todd,* for appellant.

*John A. Lovely* and *Henry A. Morgan,* for respondent.

MITCHELL, J.

On Saturday evening, January 11, 1896, a dark and stormy night, the plaintiff, a young woman about 22 years of age, was a passenger on defendant's train, known as the "Cannon Ball," from Albert Lea to Glenville. This was a through fast train, and did not stop at Glenville station except on Saturday evenings. It arrived at Glenville about midnight. There were no lights at or about the station. The evidence is conflicting as to whether the train stopped at the platform in order to let off passengers destined for that station, of whom there were at least six. We shall assume that it did so stop, in accordance with what we think was the weight of the evidence, but it is also apparent that, being a through fast train, its stop was very short. After the train had started again, one of the brakemen having discovered that three of the passengers, including the plaintiff, destined for Glenville, had not gotten off, signaled the train to stop again. It stopped so as to leave the car in which plaintiff was riding at least 250 feet beyond the end of the station platform.

The evidence tends to show that this second stop, if it was the second, was very brief; that the passengers were hurried off, so that the train should not be delayed long; that when the train came to a stop the plaintiff, who was already standing in the aisle of the car, went forward to the car platform, following the brakeman, who prepared to assist her by getting down upon the ground; that the night was so dark that it was impossible for plaintiff to see where the train was standing; that she supposed it was at the platform, and that when she stepped from the lower step of the car she would alight on the platform, which would have been only six or eight inches below the step; that, as a matter of fact, the railroad track at this place was graded up three feet or more above the level of the adjacent land, the top of the grade being eighteen or twenty inches below the lower step on the car, and sloping down to

the level of the adjoining ground; that the brakeman gave her no warning as to the distance she was about to descend, and gave her no assistance except to take hold of one of her hands with one of his, and possibly to place his other hand on her elbow, but not sufficient to support her body in case she should fall. As might naturally be expected when a person miscalculates the distance he is about to descend, the plaintiff fell upon the frozen ground, and sustained the injuries complained of.

Conceding, for the sake of argument, that the defendant's servants stopped the train at the platform a sufficient time to enable passengers to get off, and that plaintiff was at fault in not getting off, still, having stopped again and invited her to get off at another place, they were certainly bound to exercise reasonable care to enable her to do so safely. The brakeman knew, or ought to have known, the character and condition of the place, which she, owing to the darkness, did not,—a fact which he ought to have anticipated, especially in view of the fact that she had just come out of a lighted car into the darkness outside. The negligence of defendant's servants was, on the evidence, clearly a question for the jury.

The plaintiff had an artificial limb, but there is no evidence that defendant's servants were aware of the fact. But, even if she had not been laboring under this disability, the negligence of defendant's servants would still have been a question for the jury. It also appears that the most serious injuries sustained by the plaintiff in falling resulted from the shock and jar caused by the artificial limb striking the frozen ground; in other words, the existence of the artificial limb greatly aggravated the injurious results of the fall. But, notwithstanding this, the efficient and proximate cause of all her injuries was defendant's negligence.

Judgment affirmed.