BASS *v.* CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS
RAILWAY CO.

1. SAVING QUESTIONS FOR REVIEW—EXCESSIVENESS OF VERDICT—
NECESSITY OF MOTION FOR NEW TRIAL.

   Where a motion for new trial, assigning excessiveness of ver-
   dict and other reasons as grounds, is overruled without rea-
   sons shown or requested, the question of excessiveness of ver-
   dict cannot be raised in this court, the case not being one in
   which the rule and data for the computation of damages are
   fixed by law.

2. CARRIERS—PASSENGERS—TERMINATION OF RELATION.

   Where a passenger is sleeping when the train arrives at his
   destination, and those in charge of the train, knowing it to
   be his destination, fail to awaken him and acquaint him with
   the fact, his failure to leave the train immediately does not
   terminate the relation of passenger and the carrier's duty to
   him as such.   GRANT, J., dissenting.

Error to Cass; Carr, J.   Submitted October 20, 1905.
(Docket No. 89.)   Decided December 4, 1905.

Case by Edward Bass against the Cleveland, Cincinnati,
Chicago & St. Louis Railway Company for personal in-
juries.   There was judgment for plaintiff, and defendant
brings error.   Affirmed.

*C. E. Cowgill* (*M. L. Howell*, of counsel), for appel-
lant.

*Burns & Sweet*, for appellee.

HOOKER, J.   The plaintiff, a young man residing at
the time at Kalamazoo, purchased an excursion ticket to
Benton Harbor over the Michigan Central and defendant's
roads.   On the return trip the plaintiff rode in the smoking
car and a number of passengers in that coach were riotous

and disorderly, to a degree that merited severe measures in suppressing their disorder. An altercation with the conductor resulted, and, while the train stopped at the last station but one on the trip, one of the young men procured an ax helve, and it was carried on the car to Niles, where the plaintiff and other young men were to change cars, having to walk a distance of several blocks to take the Michigan Central train. The conductor was warned of the intention of the young men to attack him. They waited some 10 or 15 minutes and until he had signaled the train to start, when they closed about him and one of their number asked his name and entered into conversation with him. At the same time another approached him and lifted the ax helve in a way that led the conductor to believe that a blow was intended, whereupon he wrested the ax helve from him and swung it around. Most of the crowd had stepped back in time to avoid the blow, but the plaintiff was hit on the head and the scalp was cut for two inches. At the time the conductor was so close to the train that it nearly rubbed his back as it moved off. He caught on the train and went with it. There is little, if any, room for controversy about the foregoing statement. The preconcerted arrangement and attack upon the conductor is scarcely denied, and the claim that the plaintiff was not of the party, but was casually passing at the time, strikes us as so improbable, and the verdict is so excessive, that we should unhesitatingly set aside the verdict as contrary to the law and the evidence, did the record permit. The judge's reasons for denying the motion are not shown, as required by law.

The plaintiff claims that he was asleep when the car reached Niles, and that he so remained until some person came into the car, a few moments before the train left, and aroused him; that he did not loiter, but went immediately out, and was going away when struck. This raised a question of fact as to his participation in the attack upon the conductor, which it was necessary to leave to the jury. Hence we cannot say that it was conclusively proved that

he was one who either participated in or loitered to see the attack.

It is claimed by defendant's counsel that it was the duty of the plaintiff to be awake, and immediately alight and depart when the train stopped, and, failing to do so within a reasonable time, the relation of passenger had ceased, and the defendant owed him no duty of protection. This question was left to the jury, and the defendant claims it should have been determined by the court.

The declaration is a count for negligence, and counsel claim that, if it be found that there was a question of negligence in the case, the jury should have been instructed that plaintiff could not recover by reason of his contributory negligence (1) in not being awake and leaving the train and premises promptly, and (2) in getting in so close proximity to the parties engaged in the altercation as to be struck, when the immediate attacking parties escaped. We fail to find any allusion to the question of contributory negligence upon the trial. Not once was attention called to such a question. At any rate it is not pointed out to us, and we have not discovered it.

It is true that voluminous requests to charge were presented, in which the effect of plaintiff's delay was given prominence; but, while the effect of such delay upon his right to protection as a passenger was given prominence, there was nothing to indicate that the doctrine of contributory negligence was in the mind of counsel. The court did not give these requests, but he did instruct the jury, in effect, that the plaintiff was required to depart in a reasonable time under all the circumstances, and, if he did not, could not recover. He refused however to instruct that a failure to keep awake and to leave the train immediately would necessarily deprive him of his right to protection as a passenger. We are not cited to any case which holds that a failure to leave the train immediately by a passenger who is sleeping terminates the relation of passenger and the carrier's duty to a passenger, where those in charge of the train, knowing it to be his destina-

tion, have failed to awaken him and acquaint him with the fact that he should alight.

We have endeavored to examine critically the assignments of error raised, and fail to find one which calls for a reversal of the judgment. It is therefore affirmed.

McALVAY, BLAIR, and MONTGOMERY, JJ., concurred with HOOKER, J.

GRANT, J. (*dissenting*). I agree with my Brother HOOKER that the overwhelming weight of the evidence in this case is in favor of the defendant, and that the verdict is very excessive, but that these questions are not before us for review, under *McRae* v. *Lumber Co.*, 102 Mich. 488, a case the parallel of this in its facts as to a new trial. Upon the motion for a new trial eight errors were assigned, one of which was that the verdict was excessive. The circuit judge simply overruled the motion, assigning no reasons, and not being asked to assign any. Neither was any exception taken to the order overruling the motion. When the question of an excessive verdict can be raised in the appellate court upon a writ of error without a motion for a new trial under 3 Comp. Laws, § 10504, is stated in *McDonald* v. *Steel Co.*, 140 Mich. 401.

I cannot agree with my Brother HOOKER in holding that the plaintiff established a liability on the part of the defendant. Plaintiff was a passenger over defendant's road from Benton Harbor to Niles. The defendant had safely carried him to his destination. The act of carrying had ended, and its duty in that regard fully performed. The law then imposed one duty upon the defendant and another upon the plaintiff. The defendant's duty was to seasonably announce in each car the station, so that the passengers for that station might alight. This it concededly did. Its next duty was to wait a reasonable time for passengers to alight in safety. This it concededly did. Plaintiff admits it. He testified that, when he started to get off, all the others had gotten off; that his time for crossing from the depot of the defendant to the depot of

the Michigan Central—about one-fourth of a mile—to catch a train there for his home was short. His excuse for not alighting he gives as follows:

"Says that he went to sleep and slept there until everybody left the train and that he was sober; that he was sitting in the back seat of the smoking car, close to the door, and that he could have got out as quick as any one, if he had not been asleep; that he got off ' as quick as this fellow woke me up, but they were all gone; ' that some one came back into the car to wake him up, but he did not know who it was."

When he alighted, the conductor was standing close to the car, with his back to it, surrounded by several riotous young men, evidently determined upon assaulting him. The ax helve was raised by one for that purpose. The conductor seized it, swung it around with his left hand, and struck the plaintiff, inflicting a not serious scalp wound. Plaintiff testified that he was then walking from the car towards the depot, when he got into this crowd. When struck he was the nearest one of them to the conductor. If he did not design to participate in the attack, or intentionally place himself at the front of the crowd for the purpose of seeing, it is difficult to understand why he did not pass around them. His basis for recovery is that he was still a passenger, and that the defendant owed him the high degree of care required of carriers of passengers. The question of contributory negligence under the record may be ignored.

The cases cited in behalf of the plaintiff are not in point. I deem it unnecessary to analyze them. Some are cases of travelers upon the streets or highways. Others are where accidents happened in alighting from the train. Others involve assaults upon passengers by the employés of the company while upon the train. In one case the passenger had promptly alighted from the train, and was promptly passing from the depot grounds, when he was assaulted in the presence of the company's agent, who took no steps to protect him, and who knew that the assault

was to be committed; the assaulter being a friend of his and his guest at the time. *Texas, etc., R. Co.* v. *Dick,* 26 Tex. Civ. App. 256. I doubt the soundness of that opinion. None of the cases involve the right of a passenger deliberately remaining in the car after he has had ample time to alight, and the conductor has no knowledge that he desires to alight, and he is injured in the manner the plaintiff in this case was. The question is not discussed at any length on behalf of the defendant, and only one case is cited.

Plaintiff was not riding in a sleeping car, when undoubtedly he would have been entitled to be awakened by some employé of the company in sufficient time to get ready to alight. He was riding in the day time in a long train, whose cars were full, and passengers standing, unable to get seats. It was not the duty of any employé of the company to awaken the plaintiff. *Nichols* v. *Railway Co.*, 90 Mich. 203. It had performed its full duty in this respect in calling out in the cars the name of the station, and in giving the passengers sufficient time to alight. This rule is founded in reason and common sense. Any other notice would be impracticable and incompatible with the speed and dispatch of business demanded by the traveling public. Thompson, in his valuable work on the Law of Negligence, after stating the duty of the carrier to call out the name of the station in sufficient time, and to stop the train a sufficient length of time, says:

"The weight of authority is to the effect that a railway company discharges its duty when it stops at any station long enough to afford all passengers intending to alight there a reasonable time to alight in safety, and that the conductor is not bound to go through the train and ascertain that each passenger so intending has alighted before starting the train, but that, having afforded a sufficient time, he is entitled to presume that every passenger has availed himself of the opportunity." 3 Thompson on Negligence, § 2861.

See, also, section 2864. Where a passenger had been carried to the station at the terminus of the road, which

was also his destination, and the proper announcement had been given by the employés of the company, but he remained upon the train for 25 minutes, when the train was backed over a crossing, in which an accident occurred and he was killed, the court held that he had ceased to be a passenger.  The court said:

"When he had been safely carried to his destination and to·a point which was then the end of the road, and had been afforded almost half an hour to leave the train, the company no longer owed him any duty as a passenger, nor was it under any obligation to him as such." *Chicago, etc., R. Co.* v. *Frazer*, 55 Kan. 582.

In a similar case, where the train had reached the end of its route which was also the destination of the passenger, but she remained for about 25 minutes upon the train, and was injured while alighting, it was held that the relation of carrier between the railroad company and plaintiff had ceased, and that the defendant was not liable. *Imhoff* v. *Railway Co.*, 20 Wis. 344.  The same rule is held in the following cases: *Illinois Cent. R. Co.* v. *Slatton*, 54 Ill. 133; *Straus* v. *Railroad Co.*, 75 Mo. 185; *Clotworthy* v. *Railroad Co.*, 80 Mo. 220; *Hurt* v. *Railway Co.*, 94 Mo. 255; *Raben* v. *Railway Co.*, 73 Iowa, 579.  There are many cases involving the reciprocal duties of carriers and passengers in boarding and alighting from trains.  I have not examined them all.  I have examined many, and I find no one holding that, under the circumstances of this case, the relation of carrier and passenger had not ceased.

Upon this point there was no question of fact to submit to the jury.  Plaintiff's own testimony shows that he had ample time to alight and to depart from the platform before he was injured.  The train stood there from 10 to 15 minutes.  The conductor had given the signal to the engineer to move.  The train had started, and was moving, when the difficulty arose.  It is further established beyond controversy that $1\frac{1}{2}$ to 3 minutes was ample time for all the passengers to alight.  They had all alighted, ex-

cept the plaintiff, and some one, evidently missing him, according to his own statement, returned to the train and awakened him. If, under these circumstances, the baggageman or express messenger had been wheeling a truck upon the platform alongside the car, under the belief that all the passengers had alighted, and plaintiff, in stepping off, had been struck by such truck, under the above authorities defendant would not be liable. If his status as a passenger had ceased when stepping from the train, it did not reattach the moment he stepped upon the platform. It was as much his duty to, with reasonable promptness, alight from the car as it was to leave the platform. The two acts cannot be separated under the facts of this case. The conductor had a right to assume that all the passengers had alighted and left, and that the threatening crowd which was around him had ceased to be passengers. Defendant was no longer required to exercise towards plaintiff that high degree of care which the law requires when he was in its custody as a passenger, but was only required to exercise the ordinary care which it owes all persons upon its station grounds who are not passengers.

The court instructed the jury that:

"The uncontroverted evidence in the case shows that from one to three minutes would have been ample time for the plaintiff, after alighting from said train upon the defendant's passenger station grounds at Niles, to have gone upon and entirely across the said station grounds in the reasonable and practicable direction of his destination beyond. If, therefore, you find from the evidence that he loitered upon the defendant's said premises some five or six minutes or more beyond what was reasonable or reasonably required for his leaving the same, and during which time he received his injuries, the defendant's duty by the plaintiff, under said contract sued upon, would at the time plaintiff received said injuries have ceased. The defendant would not be liable to plaintiff on account of said injuries, and your verdict must be for the defendant, if such be the case."

His loitering upon the car before alighting was as effectual to destroy his status as a passenger as would

have been his loitering after alighting. The charge of the court ignored his loitering upon the car, assumed that his status as a passenger existed when he alighted, and continued until he had a reasonable time to leave the platform. The court should, as requested, have directed a verdict for the defendant.

For the reasons above stated, I think the judgment should be reversed, and new trial granted.