CLYDE D. VANDERBECK, Appellant, v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILWAY COMPANY, Appellee.

No. 39752.

APRIL 14, 1930.

*Robert B. Pike* and *Larned F. Brown,* for appellant.

*Hughes, Taylor, O'Brien & Faville* and *Shull, Stilwill, Shull & Wadden,* for appellee.

EVANS, J.—The story leading up to the alleged ejection is brief. At 2 A.M., July 31, 1928, the plaintiff boarded the passenger train of the defendant at Yankton, South Dakota, being bound for Vermilion, 27 miles distant. He was due to arrive at Vermilion at 2:45 A.M. After seating himself in the car, he quickly fell asleep. The conductor of the train occupied the seat across the aisle from him. The train arrived and stopped in due time at Vermilion, but the plaintiff was not awakened, and did not, therefore, leave the train during such stop. After the train had started from the station, the conductor discovered that the plaintiff was still thereon. As to what occurred at this point the plaintiff testified as follows:

"The next thing I remember, the conductor was shaking me and telling me this was Vermilion,—'get off here.' I got up, and started toward the front of the train. The conductor stopped me and told me to come out this way,—the back way. I turned around, and went out to the back vestibule, in the rear of the car. The conductor opened the back vestibule, and the train came to a stop, and I got off. I supposed that it was at the station at Vermilion."

The plaintiff testified also that the place where he got off was from a half a mile to three quarters of a mile distant from the station; that he walked back to the station on the railroad track; that in so doing he stumbled over some obstruction, whereby his foot was seriously injured, in that a dislocation had resulted.

The defendant introduced its testimony before submitting its motion for a directed verdict. Such testimony was contradictory to that of plaintiff in several respects. The defendant, as appellee, has predicated its argument here upon the testimony of its own witnesses, which is more favorable to the defendant than is the testimony of the plaintiff. The helpfulness of appellee's argument has been thereby impaired. For the purpose of this appeal, we must take the view of the evidence most favorable to the appellant.

The parties have argued two principal questions: (1) Did

the trainmen owe to the plaintiff the duty to wake him up, upon arriving at the station at Vermilion, or did he sleep at his own peril? (2) Was the conductor legally justified in ejecting the plaintiff from the train at the time and place, on the ground that the plaintiff had become a trespasser upon the train by his failure to leave the train at Vermilion, to which point his transportation had been paid? The alleged failure of the trainmen to awaken the plaintiff and the later ejection of the plaintiff have been treated in the arguments as parts of the same negligence, and as a joint cause of the same injury. In a legal sense, these two acts were separate events. If they were negligences, they were separate, and each had its own consequence. They are related in point of time and sequence, but as causes of an injury, they were distinct. The failure to awaken the plaintiff at Vermilion would result naturally in carrying him by to a more distant station, and might thereby cause him inconvenience and loss of time and expense; and this would be true whether the fault lay with the trainmen or with the plaintiff himself. If the fault were with the trainmen, the basis of recovery would be as here indicated. On the other hand, the ejection from the train carried its own consequence, regardless of the reasons for it, and regardless of the first event. The ejection might be wrongful even though the trainmen had no blame for carrying the plaintiff past his destination.

For the purpose of clarifying the nature of plaintiff's cause of action and of avoiding the confusion of cause and effect, we will consider first the last event.

I. Suppose it to be true that the trainmen owed to the plaintiff no duty to wake him up, and that his failure to leave the train at Vermilion, as his destination, rested wholly upon his  own fault. Upon such hypothesis, was the conductor legally justified in ejecting the plaintiff from the train at the time and in the manner indicated? The question is not whether the conductor had a right to demand the fare to the next station, nor is it the question whether the conductor should have backed his train to the Vermilion station. The requirements of public safety might forbid that, even though the trainmen had been at fault.

The argument for the appellee is that, upon the failure of the

plaintiff to leave the train at his destination, he thereby became a trespasser, and as such, became subject to immediate ejection. There are authorities which so hold, and these are the reliance of the appellee. The courts which have adopted this doctrine are few in number. The contrary holding by the courts is that a passenger, under such circumstances, does not become a trespasser unless and until he refuses to pay his fare to the next station, or it becomes evident that he does not intend to pay such fare. Such was the doctrine recognized by this court in *Forbes v. Chicago, R. I. & P. R. Co.*, 135 Iowa 679. In that case we said:

"It cannot be true, however, as a general proposition, that, when a passenger fails to alight from the train at the destination to which he has purchased a ticket, he becomes a trespasser. If he sees fit to remain upon a train which is one upon which passengers are entitled to ride, it must be presumed that he intends to pay the proper fare, and, until this presumption is overcome by some evidence that he intends to be carried without payment of fare, he is entitled to the same protection as any other passenger."

Cases from other jurisdictions holding to a similar effect are the following: *Payne v. Davis*, 298 Mo. 645 (252 S. W. 57); *Hanson v. Chicago, R. I. & P. R. Co.*, 83 Kan. 553 (112 Pac. 152); *Gilkerson v. Atlantic Coast Line R. Co.*, 99 S. C. 426 (83 S. E. 592); *Gilkerson v. Atlantic Coast Line R. Co.*, 105 S. C. 132 (89 S. E. 549); *Kral v. Burlington, C. R. & N. R. Co.*, 71 Minn. 422 (74 N. W. 166). For a collation of cases on the subject, see 10 Corpus Juris, Sections 1266—1274.

It is argued by appellee that the plaintiff tendered no additional fare, and that he did not indicate preference to go to the next station in lieu of leaving the train where he was. He was  under no more duty to tender fare than any other passenger. We should take judicial notice of what everybody knows: that passengers on a train do not seek out the conductor, to tender fares. On the contrary, the conductor invariably visits the passenger and calls for the fare. Moreover, it appears from the testimony of the plaintiff that he was deceived as to the place where he was leaving the train. The conductor said

to him, "This is Vermilion,—get out here." He followed the conductor upon that representation. It was only after he had stepped from the train that he learned that he was far removed from any station. Though, therefore, the conductor accomplished the ejection in an orderly manner, and without force or disturbance, yet he accomplished it by deception of the passenger, who might well have preferred to pay his fare to the next station rather than to be abandoned in the dead of night upon a railroad track in a region where he was a stranger. Without intimating any opinion as to the relative weight of the conflicting evidence, we think a jury question was presented. A wrongful ejection, if so found by the jury, would, of itself, warrant the award of substantial, rather than nominal, damages. *Meyers v. Keokuk Elec. Co.*, 190 Iowa 693.

II. We revert now to the first event. The question presented in that connection is: Did the trainmen owe to a sleeping passenger any duty of assistance in alighting from the train  at his destination? Was the plaintiff guilty of negligence, either in going to sleep at all, or in failing to awaken himself in time to leave the train at his destination? As he entered the car at Yankton, he found the lights dimmed therein, for the evident purpose of encouraging, or at least protecting, the sleep of passengers upon the seats. The conductor testified that, when he took up the plaintiff's ticket, he did not leave with him a "hat-ticket;" that he returned with such ticket, a short time later, and found the plaintiff asleep; that for that reason he refrained from putting the ticket in his hat, but placed it otherwise, where the brakeman would see it, on arriving at Vermilion. He testified:

"I put the check in the ticket clip that night, but didn't put it in until after we left Gayville. That is not the way we ordinarily do it. I did it differently that night because I noticed the passenger was huddled upon the rear seat, and to avoid the brakeman probably disturbing some passenger who was not going to Vermilion, I put a check up there for his information, so that he would know who to call, or who to notify that we were arriving at Vermilion. The purpose of that is so that, if the passenger is asleep on the arrival to the station, the brakeman can go and call him without disturbing the other passengers."

The rule relied on by the appellee, to the effect that the only duty owed by a carrier to its passenger is to call the station and to stop thereat a reasonable length of time for the departure of the passenger, is stated as follows:

"But there is no duty on the part of the railroad company to awaken a sleeping passenger, in order to advise him that his destination has been reached, and to enable him to get off the train there. *Nunn v. Georgia Railroad Co.*, 71 Ga. 710." *Seaboard Air-Line Ry. v. Rainey*, 122 Ga. 307 (50 S. E. 88).

This is a harsh rule, and is rejected every day in the actual practice of trainmen. To their credit be it said that trainmen do habitually and resolutely awaken sleeping passengers, and do habitually see to it that the infirm and the sleepy do leave their train at their destination, and habitually do assist them courteously. Indeed, under the law of this state, a would-be passenger becomes such when he enters upon the depot grounds for the purpose of boarding a train, and he continues to be such until he leaves the same at his destination, or intentionally becomes a trespasser thereon. The passenger is entitled to a safe exit at a safe place, and to such assistance as is necessary for that purpose. Such rule of law adds nothing to the burden which is habitually assumed by trainmen toward the passengers in their care. This habitual attitude of trainmen impliedly invites the passenger to sleep at his pleasure. In the case before us, the failure of conductor and brakeman to awaken the plaintiff was not willful. It was doubtless an oversight. The brakeman testified that, when he took up the ticket, he tapped the plaintiff on the shoulder, and called the station, "Vermilion." He did not, however, wake him, and the plaintiff knew nothing of the incident, if his testimony be accepted. The train had no passenger for Vermilion other than the plaintiff. None left the train there. The trainmen promptly awakened the plaintiff after the train started out of Vermilion. In so doing, they were acting within the line of their duty to their employer. If it was their duty to their employer to wake him *after* the train left, was it any less their duty to the passenger to wake him *before* it left? If they had *first* discovered him after the train left, a different question would arise. But their first discovery was before the train left. As the train approached its stopping point, they

knew then all that they knew later. They knew that their passenger was asleep, and that he would not (and could not) leave the train unless someone awakened him. It was *then* apparently inevitable that they must awaken him sometime. Was it more burdensome. to perform this duty before the train left than it was to perform it after?

Suppose that, instead of falling asleep, the passenger had fallen in a faint. He might recover quickly therefrom, or he might not. Concededly, in such a case, the duty of the trainmen would be to furnish reasonable assistance. They could not speculate on his possible recovery in time to help himself from the train. But a passenger while he is asleep is as unconscious and helpless as if he were in a faint.

Precedents directly in point on the question here considered are not numerous. It has been considered and discussed in the cases hereinbefore cited. We quote the following discussion by the Supreme Court of Kansas in *Hanson v. Chicago, R. I. & P. R. Co.*, 83 Kan. 553 (112 Pac. 152, 154) :

"Cases are cited in support of the proposition that, when a passenger fails to leave a train when his destination is reached, after a reasonable opportunity to do so, the relation of passenger and carrier is terminated, and he then becomes a trespasser. This is not true, however, in all cases. If one in such a situation offers to pay fare to a station beyond, the relation continues unbroken. (*Forbes v. Railway Co.*, 135 Iowa 679.) It would be a harsh rule that would hold every person a trespasser who remains upon a train after it reaches the place designated in his ticket. Whether he is a trespasser must depend on the circumstances of each case, which may present questions for a jury. It is held that a person who goes aboard the wrong train, or one upon which his ticket does not entitle him to ride, is, nevertheless, a passenger; and while he may be ejected, it must be done with all proper care. In such a case, it was held that, although the passenger has no right to a passage, he cannot be expelled from the train as a trespasser, but must be treated as a passenger who, by mistake, has got upon a train on which, by his contract, he is not entitled to ride. (*Lake Shore & Mich. Southern Ry. Co. v. Rosenzweig*, 113 Pa. St. 519; *Arnold v. Pennsylvania Railroad Co.*, 115 Pa. St. 135.) In a case in Michigan where a sleeping passenger delayed leaving the train after

a full opportunity to do so had been given, and was afterward injured by the alleged negligent act of the conductor, it was held that the claim of the company that the relation of passenger and carrier had ceased, and that the company owed him no duty of protection, could not be sustained as a matter of law, but was properly left to the jury. (*Bass v. Cleveland, etc., R. Co.*, 142 Mich. 177.) In a note following a report of that case in Volume 7 of the American and English Annotated Cases it is said that the rule that no obligation to arouse a sleeping passenger and to see that he gets off at his destination 'has been laid down in cases where passengers have sought to recover damages for being carried beyond their destinations, and is not in conflict with the holding of the reported case.' (p. 721.) It was held in *Railway Co. v. Wimmer*, 72 Kan. 566, that 'the duty which a railway company owes to a passenger to exercise the highest degree of care for his safety which is reasonably practicable does not cease until the passenger has reached his destination and left the train.' (Syllabus.) It is probably true that, if a passenger should unreasonably delay his departure from a train in such circumstances as to indicate a willful or wanton disregard for the rights of the carrier or the traveling public, thereby intending to compel a stop for his benefit, or because of ill will, or to secure further passage without pay, or like wrongful purpose, he would thereby forfeit his right to the high degree of care due to a passenger, and might, if the circumstances warranted the inference, be considered a trespasser; but the question in the case of any doubt or uncertainty of the facts would be for a jury.''

In the cited case of *Gilkerson v. Atlantic Coast Line R. Co.*, 99 S. C. 426 (83 S. E. 592), the duty of the carrier to a sleeping passenger is defined as follows:

''The question is not whether it is the duty, ordinarily, of a conductor to awake a sleeping passenger, but whether it is his duty to render assistance to a passenger, in order that he may alight from the train at the proper time, when his physical condition renders such assistance necessary, and the conductor has knowledge of such fact. Under such circumstances, a promise on the part of the conductor is merely incidental to his duty to render assistance to passengers in getting off the

train when he has notice of the fact that his aid is needed. This is not a case in which the passenger was attempting to convert an ordinary coach into a sleeping apartment, but where he was afraid he would be overcome by sleep involuntarily, on account of his physical condition, and therefore sought the assistance of the conductor, in order that he might be in a condition to make the necessary change of cars.''

For the purpose of the case at bar, we hold only that, where the trainmen know that a passenger is asleep as the train is closely approaching his destination, the question whether, under all the circumstances, the carrier owes the sleeping passenger the duty of waking him up in time to enable him to leave the train at the station is a jury question.

We are of the opinion that the plaintiff did not necessarily lose his status as a passenger by his unintentional failure to leave the train at Vermilion; that he infringed no right of the carrier's in going to sleep in his seat; that, in view of the fact that the trainmen knew he was sleeping, and impliedly permitted him to do so, this fact had its proper influence upon the duty of the trainmen to afford him reasonable assistance in leaving the train at his destination; and that it was for the jury to say whether the fulfillment of that duty required them to awaken the passenger.

In view, however, of the fact that the failure of the trainmen in this regard carries its own consequences only, and inasmuch as no damage resulted from, and none is claimed for, this failure, our discussion of the legal status may be deemed somewhat academic. But it does bear on the question whether the plaintiff had become a trespasser. The only actual damage claimed by the plaintiff is that resulting from the wrongful ejection. In the foregoing discussion, we are not making a pronouncement of facts. We are only accepting the testimony of the plaintiff at its face, for the purpose of determining whether a jury question was presented. We answer in the affirmative.

The order of the district court directing a verdict is, therefore,—*Reversed.*

Morling, C. J., and Stevens, De Graff, Kindig, and Wagner, JJ., concur.

Grimm and Albert, JJ., specially concur.

FAVILLE, J., not participating.

GRIMM, J. (concurring).—Because the plaintiff testified that, when he was awakened and got off the train, he supposed he was getting off at the station of Vermilion, I agree that the court erred in directing a verdict for the defendant; but I do not concur in some of the discussion contained in the opinion, particularly that portion which pertains to the duty of the railroad company to a passenger riding in a day coach.

ALBERT, J., joins in this special concurrence.